IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SPIRTAS WRECKING COMPANY CANADA, a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Cause No.:  4:10-cv-00334 CEJ |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| SSPM BATHURST, L.P. an Ontario Limited Partnership, | ) ) ) | |
| and | ) ) | |
| AMERICAN IRON & METAL COMPANY, INC., a Quebec Corporation, | ) ) ) ) | |
| and | ) ) | |
| AMERICAN IRON & METAL, L.P. a Quebec Limited Partnership, | ) ) ) | |
| and | ) ) | |
| HERBERT BLACK, a resident of Quebec, Canada, | ) ) ) | |
| Defendants. | ) | |

**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, SPECIFIC PERFORMANCE, COMPENSATORY AND PUNITIVE DAMAGES, AND LITIGATION COSTS</u>**

COMES NOW Plaintiff, Spirtas Wrecking Company Canada ("Spirtas Canada"), and for its First Amended Complaint states to the Court as follows:

**<u>The Parties</u>**

1. Spirtas Canada is and was at all times pertinent a corporation organized and existing under Delaware law, with its principal place of business in St. Louis, Missouri, and

engaged in the business of demolition, materials salvage and environmental remediation. Spirtas Canada has a "sister" relationship with two affiliated but separate Delaware corporations, Spirtas Wrecking Company New Richmond ("Spirtas New Richmond") and Spirtas Wrecking Company Pontiac ("Spirtas Pontiac").

    2.    Defendant SSPM Bathurst, L.P. ("SSPM Bathurst") is and was at all times pertinent a limited partnership organized and existing under Canadian law in the province of Ontario, with its principal place of business in Alton, Illinois, and engaged in the business of investing, owning and managing industrial and commercial property. Upon information and belief, SSPM Bathurst has a "sister" relationship with two affiliated Ontario limited partnerships and a corporation, namely, SSPM New Richmond, L.P. (SSPM New Richmond"), SSPM Pontiac, L.P. (SSPM Pontiac"), and SSPM 2 Redevelopment Group, Inc. ("SSPM 2").

    3.    Defendants American Iron & Metal Company, Inc., and its affiliate, American Iron & Metal, L.P. (collectively, "American Iron" or the "American Iron entities"), are and were at all times pertinent a corporation and limited partnership, respectively, organized and existing under Canadian law in the province of Quebec, with their principal place of business in East Montreal, and engaged in the business of demolition, materials salvage and environmental remediation. The American Iron entities committed the acts complained of through their principal officer, manager and/or agent, Herbert Black.

    4.    Defendant Herbert Black is and was at all times pertinent a Canadian citizen residing in the province of Quebec.

## Jurisdiction and Venue

    5.    This Court has diversity jurisdiction over this matter under 28 U.S.C. Section 1332 because it involves disputes among a Delaware corporation with citizenship in the State of

Missouri, a foreign limited partnership with citizenship in the State of Illinois, a foreign corporation, a foreign limited partnership, and a foreign citizen. The amount in dispute, exclusive of interest and costs, exceeds $75,000.

6. This Court has personal jurisdiction over SSPM Bathurst, the American Iron entities and Herbert Black because each of these defendants engaged in the wrongful acts complained of within this judicial district by making phone calls, sending electronic messages, wire-transferring or directing the wire transfer of money, appearing personally and directing mail to Spirtas Canada and its affiliates within this district.

7. Venue in this Court is proper under 28 U.S.C. Section 1391 because a substantial part of the events or omissions giving rise to the claims arose in this judicial district and SSPM Bathurst, the American Iron entities and Herbert Black are subject to personal jurisdiction here at the time this action has commenced.

## General Allegations Applicable to All Counts

8. Spirtas Canada and the SSPM entities engaged in extensive negotiations for Spirtas Canada to act as a general contractor for materials salvage and demolition services at the Bathurst Paper Mill in New Brunswick, Canada. During these negotiations, Spirtas Canada advised Ray Stillwell of SSPM that Spirtas Canada intended to use Lorbec Metals, Ltd. ("Lorbec") as its subcontractor for the project. Indeed, on January 4, 2010, Dave Mizell of Spirtas Canada met with Ray Stillwell and Mark Spizzo at the SSPM office in Alton, Illinois. During that meeting, Jay Goldstein, President of Lorbec, joined the meeting via telephone to discuss the Bathurst Paper Mill project.

9. Before Spirtas Canada and SSPM Bathurst entered into their final project assignment agreement for the Bathhurst Paper Mill project, Spirtas Canada had entered into a

preliminary agreement for the project with SSPM 2. The preliminary agreement was dated January 4, 2010. The preliminary agreement did not contain many of the pricing details included in the final agreement. But the agreement did designate on a preliminary basis in Section 2.1.1 thereof those buildings and facilities of the Bathurst Paper Mill that were to be retained by SSPM 2. The primary purpose of the preliminary agreement was to assure Spirtas Canada's proposed subcontractor, Lorbec, that an agreement was in place and to advise Lorbec of the scope of the proposed demolition and materials salvage project. Ray Stillwell of SSPM 2 was fully aware of this purpose and cooperated with Spirtas Canada in executing the preliminary agreement.

      10.      On January 7, 2010, Ray Stillwell advised Spirtas Canada that the names of the buyers of the Bathurst Paper Mill were being changed for tax reasons. Because of this notice, the name of SSPM Bathurst was substituted for SSPM 2 in the final written agreements. But the preliminary designation of the buildings and facilities of the Bathurst Paper Mill that were to be retained by SSPM Bathurst remained unchanged in Section 2.1.1 of the final Project Assignment 01 agreement. The preliminary designation of excluded buildings and facilities became final upon the execution of the January 12, 2010 Master Agreement and Project Assignment 01 agreement.

      11.      On January 12, 2010, Spirtas Canada and SSPM Bathurst entered into the Master Agreement for Spirtas Canada to act as a general contractor for materials salvage and demolition services at facilities owned by SSPM Bathurst. Under the general authority of the Master Agreement, Spirtas Canada and SSPM Bathurst also entered into the additional contract on the same date for Spirtas Canada to provide assigned materials salvage and demolition services, designated as "Project Assignment 01," at the Bathurst Paper Mill. Under these contracts, Spirtas Canada guaranteed payment of a certain sum to SSPM Bathurst as a portion of the

4

monies obtained from the salvage of materials at the Bathurst Paper Mill, and based on a cautious analysis of anticipated scrap markets over the period of work, the parties projected excess revenues that would be shared 70% to SSPM Bathurst and 30% to Spirtas Canada.  The contracts gave Spirtas Canada broad latitude to employ the means and methods, including the ability to hire a subcontractor, to accomplish intermediate milestones and meet final project goals.  Redacted copies of the Master Agreement and the Bathurst Project Assignment 01 contract are attached hereto and marked Exhibits "1" and "2" to this Complaint.[1]

      12.     Spirtas Canada embarked on the performance of its obligations under the Bathurst contracts.  On January 13, 2010, Spirtas Canada engaged Lorbec to act as its subcontractor for the demolition and salvage work at the Bathurst Paper Mill.  On January 14, 2010, Lorbec wire transferred to Spirtas Canada the sum of $3,200,000 as an initial deposit for the salvage work.  The Lorbec subcontract established that Spirtas Canada and Lorbec would split the net proceeds from the sale of any equipment that exceeded scrap value, and that the value of the scrap would be determined every month using 80% of values converted to U.S. currency based on published scrap prices in the Montreal market.  Spirtas agreed to pay Lorbec a lump sum of $4,500,000 for the performance of its project tasks under the subcontract.  Spirtas and Lorbec also agreed to apply a schedule of values and adjustments for pay applications as work progressed.  The parties to the Lorbec subcontract attached the preliminary agreement between Spirtas Canada and SSPM 2 to define the scope of the demolition project and to identify those buildings and facilities to be retained by the owner.  A copy of the Lorbec subcontract with the attached preliminary agreement is attached hereto and marked Exhibit "3" to this Complaint.

      13.     On January 14, 2010, Spirtas Canada wire-transferred the sum of $2,750,000 to accounts designated by SSPM Bathurst.  SSPM Bathurst requested payment of this sum from

---

[1] Financial terms of the agreements have been redacted.

Spirtas Canada as an accommodation to enable SSPM Bathurst to close on its purchase of the Bathurst Paper Mill. The figure of $2,750,000 was far greater than the amount then owed by Spirtas Canada as of the owner's closing under the schedule of guaranteed payments in the SSPM Bathurst contract.

14.     On January 18, 2010, Spirtas New Richmond and SSPM New Richmond entered into a similar Master Agreement and "Project Assignment 01" agreement for Spirtas New Richmond to serve as a general contractor for materials salvage and demolition services at SSPM's New Richmond Paper Mill in Quebec, Canada. On the same date, Spirtas Pontiac and SSPM Pontiac entered into the same kind of Master Agreement and "Project Assignment 01" agreement for Spirtas Pontiac to serve as a general contractor for materials salvage and demolition services at SSPM's Pontiac Paper Mill in Portage-du-Fort, Quebec, Canada.

15.     Shortly after the New Richmond and Pontiac contracts were signed, Spirtas New Richmond and Spirtas Pontiac engaged American Iron & Metal, L.P., as their subcontractor for the demolition and materials salvage work at the New Richmond and Pontiac job sites. The New Richmond and Pontiac subcontracts were signed by the respective parties on January 29, 2010. Under the terms of those contracts, American Iron & Metal, L.P., agreed to perform the work required thereunder and pay Spirtas the lump sum amount of $5,000,000 in U.S. Dollars for each subcontract. On Friday, January 29, 2010, the American Iron entities wire-transferred these sums to Spirtas New Richmond and Spirtas Pontiac, respectively.

16.     Beginning Monday, February 1, 2010, Herbert Black, acting individually for his own personal benefit and/or as an agent for one or both of the American Iron entities, called Arnold Spirtas, the Chairman of Spirtas Canada, repeatedly for an entire week in a sustained attempt to pressure Spirtas Canada to breach its Bathurst subcontract with Lorbec. Black called

the Chairman of Spirtas Canada several times each day during this period. During the course of these phone conversations, Black made the following statements, among others:

(a) Black falsely and maliciously disparaged Lorbec by misrepresenting to Spirtas Canada that Lorbec "would never do the job." Referring by name to Lorbec's president, Black asserted that "he is not a wrecker, he's a scrap firm."

(b) Black falsely and maliciously disparaged the ability of the subcontracting wrecker hired by Lorbec to assist in the demolition project, saying that he "only has a couple of dinky cranes." Black contended that he had more sophisticated demolition equipment, and that he "can finish the job."

(c) Black pressured Spirtas Canada to produce for him a redacted copy of the subcontract with names and prices removed, and then used the terms of the subcontract to raise additional false and malicious claims against Lorbec. Specifically, Black claimed, "I have found 15 or 20 things in the contract that are bad. You'll never get him to perform the way you wrote up the contract." Black asserted, "You didn't get the right time frame for completing performance. You didn't get clarification on the time for pricing, whether the first or last of the month." And Black claimed, "He screwed you on the freight costs."

(d) Black then brought direct pressure to bear upon Spirtas Canada to break the Lorbec subcontract. Black said, "Tell [Lorbec's president] you're giving him his money back. I'll take over the project and indemnify you for anything [the president] does." Alternatively, Black proposed, "Why don't you hire me to monitor this job? I'll make sure it gets done."

7

(e) In later phone conversations, Black kept insisting that Spirtas Canada should remove Lorbec from the job, and that Black would indemnify Spirtas Canada for anything the president of Lorbec did. Spirtas Canada continued to refuse these demands because Lorbec had wire-transferred the money and, to that point, had done nothing wrong.

17. During conversations on a different topic, the Chairman of Spirtas Canada told Black about a large demolition and materials salvage project coming up in St. Louis, Missouri. Black made arrangements to fly to St. Louis on Monday, February 22, 2010, ostensibly to view the potential job site.

18. When Black arrived at Lambert International Airport in St. Louis, the Chairman of the Spirtas entities was surprised to discover that Black was accompanied by Ray Stillwell and Mark Spizzo, two principal partners of the SSPM limited partnership entities, and by a fourth man. Immediately upon his arrival, Black arranged for a meeting in the presence of Stillwell and Spizzo. Black proceeded to accuse the Chairman of the Spirtas entities of having engaged in criminal fraud on the New Richmond and Pontiac projects. Black declared, "This is a criminal case. There are ten different ways we can get you." These charges were false, malicious, without justifiable cause, and designed solely to coerce Spirtas Canada to "throw in the Bathurst keys and get rid of Lorbec."

19. Because Spirtas Canada refused to capitulate to Black's pressures and demands, Black intentionally, wrongfully, and without just cause or excuse, then took direct action to interfere with all the Spirtas Canada contracts for the Bathurst Paper Mill project, including the Lorbec subcontract. Black prevailed upon SSPM Bathurst to breach its Master Agreement and

Project Assignment 01 agreement with Spirtas Canada, to stop work on the project for unjustified pre-textual reasons, and to lock out Spirtas Canada and its subcontractor.

20. On February 23, 2010, SSPM Bathurst breached its contracts for materials salvage and demolition work on Project Assignment 01 by notifying Spirtas Canada that it was stopping all work at the Bathurst Paper Mill. SSPM Bathurst further breached the contracts by unilaterally locking out Spirtas Canada and its subcontractor from the job site. SSPM Bathurst's lawyers then notified the City of Bathurst that the owner of the property would not approve Lorbec's pending application for the issuance of a demolition permit. Despite taking these unilateral actions to terminate the Bathurst contracts and prevent any performance of the Lorbec subcontract, SSPM Bathurst has retained and continues to retain the full $2,750,000 it received from Spirtas Canada to cover its costs in purchasing the Bathurst Paper Mill.

### Count I (Preliminary and Permanent Injunctive Relief)

COMES NOW Spirtas Canada for Count I of its First Amended Complaint against SSPM Bathurst, the American Iron entities and Herbert Black, individually, states to the Court as follows:

21. Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20 hereof.

22. By locking out Spirtas Canada and its subcontractor from the Bathurst Paper Mill job site, SSPM Bathurst, acting for itself, in concert with and at the behest of the American Iron entities and/or Herbert Black, individually, has caused and threatens to cause Spirtas Canada to sustain immediate and irreparable injury by depriving Spirtas Canada, not only the lost profits and damages from its contracts with SSPM Bathurst on Project Assignment 01 (which due to the complexities of the demolition and scrap process and fluctuations of the scrap metal market may

be difficult and complicated to track and document), but also the means of satisfying its contractual obligations owed to Lorbec under its subcontract.  Spirtas Canada will suffer irreparable and incalculable damage to its goodwill and reputation if it is unable to satisfy its obligations owed to Lorbec.  And this Court should consider the possibility of harm to another interested party like Lorbec in deciding whether to grant or deny an injunction.  Further, there are environmental issues in the plant which, if not handled properly could contaminate portions of the plant resulting in decreased scrap values.  Finally, if SSPM Bathurst, American Iron and Black are not restrained from performing demolition and materials salvage work on the job site, or allowing others to do so, these defendants or others will remove salvage materials and deprive Spirtas Canada of any access to those materials needed to be made whole, all in the context of daily fluctuating scrap prices.  By keeping the full $2,750,000 paid by Spirtas Canada, and preventing Spirtas Canada from satisfying its contractual obligations, SSPM Bathurst, acting for itself, in concert with and at the behest of American Iron and Black, threatens to put Spirtas Canada and its affiliates completely out of business.

23. Spirtas Canada has incurred and will in the future incur attorneys' fees and litigation expenses to enforce its rights under its contracts with SSPM Bathurst.  Spirtas Canada is entitled to recover those fees and expenses from SSPM Bathurst under Section 7.5 of the Master Agreement.

24. Spirtas Canada has no adequate remedy at law.

WHEREFORE, Spirtas Canada prays for a judgment in Count I against SSPM Bathurst, American Iron & Metal Company, Inc,., American Iron & Metal, L.P., and Herbert Black, individually, as follows:

(1) for a preliminary injunction (a) enjoining SSPM Bathurst, the American Iron entities and Black from interfering with Spirtas Canada and its subcontractor, Lorbec, in their performance of materials salvage and demolition services at the Bathurst Paper Mill in New Brunswick, Canada; (b) enjoining these defendants from performing demolition or materials salvage work at the job site, or allowing any party other than Spirtas Canada or Lorbec to perform such work; and (c) enjoining these defendants from removing any salvage materials from the job site, or allowing any party other than Spirtas Canada or Lorbec to remove such materials;

(2) for the preliminary injunction to be made permanent;

(3) for costs of suit, including reasonable attorneys' fees and litigation expenses to be assessed against SSPM Bathurst; and

(4) for such other relief as the Court may deem proper under the circumstances.

## Count II (Damages for Breach of Contract)

COMES NOW Spirtas Canada and for Count II of its First Amended Complaint against SSPM Bathurst states to the Court as follows:

25. Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20 and paragraphs 22 through 24 hereof.

26. As a direct and proximate result of the material breach of the contracts by SSPM Bathurst, Spirtas Canada has sustained and will in the future sustain lost profits and damages in excess of $75,000 associated with both the SSPM Bathurst contracts and its subcontract with Lorbec. Because the Master Agreement and Project Assignment 01 agreement gave Spirtas Canada authority to hire a subcontractor to perform its materials salvage and demolition services, and because SSPM Bathurst knew that Spirtas Canada would be using Lorbec as its

subcontractor, SSPM Bathurst reasonably anticipated that its breach would cause Spirtas Canada to sustain damages on the Lorbec subcontract at the time SSPM Canada entered into its original contracts with Spirtas Canada.

27. Spirtas Canada has incurred and will in the future incur attorneys' fees and litigation expenses to enforce its rights under its contracts with SSPM Bathurst.

WHEREFORE, Spirtas Canada prays for a judgment against SSPM Bathurst in Count II as follows:

(1) for compensatory damages in excess of $75,000;

(3) for costs of suit, including reasonable attorneys' fees and litigation expenses; and

(4) for such other relief as the Court may deem proper under the circumstances.

## Count III (Conversion)

COMES NOW Spirtas Canada and for Count III of its First Amended Complaint against SSPM Bathurst states to the Court as follows:

28. Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20, paragraphs 22 through 24, and paragraphs 26 and 27 hereof.

29. Spirtas Canada entered into the Master Agreement and the Project Assignment 01 agreement, and then on January 14, 2010, as an accommodation to SSPM Bathurst, wire-transferred the sum of $2,750,000 to accounts designated by SSPM Bathurst to enable SSPM Bathurst to close on its purchase of the Bathurst Paper Mill. Under Section 3.2.1 of the Master Agreement, Spirtas Canada was given "ownership of the scrap materials" while the project was underway. By entering into the contracts with SSPM Bathurst and making the requested payment, Spirtas Canada secured its right to the immediate possession of the scrap materials that it could recover from its demolition work on the Bathurst Paper Mill.

30.     By locking out Spirtas Canada and its subcontractor from the Bathurst Paper Mill, SSPM Bathurst wrongfully converted and deprived Spirtas Canada of the use of the scrap materials on the job site and exercised sole dominion and control over those materials. The reasonable value of Spirtas Canada's share of the scrap commodities wrongfully converted by SSPM Bathurst shall be determined based on published prices in the Montreal market under the Spirtas Canada contracts with SSPM Bathurst and Lorbec.

31.     By locking out Spirtas Canada and its subcontractor, SSPM Bathurst acted outrageously with evil motive or reckless indifference to Spirtas Canada's right to possession of the scrap materials. Spirtas Canada is entitled to an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Spirtas Canada prays for a judgment against SSPM Bathurst in Count II as follows:

(1)     for compensatory damages in excess of $75,000;

(2)     for punitive damages;

(3)     for costs of suit; and

(4)     for such other relief as the Court may deem proper under the circumstances.

### Count IV (Specific Performance)

COMES NOW Spirtas Canada and for Count IV of its First Amended Complaint against SSPM Bathurst states to the Court as follows:

32.     Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20, paragraph 22 and 23, paragraphs 24 through 27 and paragraphs 29 through 31 hereof.

33. Because the demolition work and salvage materials at the Bathurst Paper Mill job site are unique to that property, and because of the inherent uncertainties created by constant fluctuations in the market rates for scrap metals, monetary damages cannot adequately compensate Spirtas Canada for the breach of the contracts by SSPM Bathurst.

34. Spirtas Canada has no adequate remedy at law.

WHEREFORE, Spirtas Canada prays for a judgment against SSPM Bathurst in Count III as follows:

(1) directing that SSPM Bathurst specifically perform the Master Agreement and Project Assignment 01 agreement by allowing Spirtas Canada and its subcontractor to complete their materials salvage and demolition work at the Bathurst Paper Mill, and directing that the revenues generated from the scrap metals recovered by such work be shared as required under the contracts;

(2) for costs of suit, including reasonable attorneys' fees and litigation expenses; and

(3) for such other relief as the Court may deem proper under the circumstances.

## Count V (Tortious Interference with Contractual Relations)

COMES NOW Spirtas Canada and for Count V of its First Amended Complaint against SSPM Bathurst states to the Court as follows:

35. Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20, paragraphs 22 through 24, paragraphs 24 through 27, paragraphs 29 through 31, and paragraphs 33 and 34 hereof.

36. During negotiations, Spirtas Canada notified SSPM Bathurst that it was establishing a subcontractor relationship with Lorbec, and SSPM thereby knew of the existence of the Lorbec subcontract.

37. On February 23, 2010, SSPM wrongfully, maliciously, without justifiable cause, and with intent to interfere with the business and contractual relationship between Spirtas Canada and Lorbec, interfered with and prevented the performance of the Lorbec subcontract by locking out both Spirtas Canada and Lorbec from the Bathurst Paper Mill. By locking out Spirtas Canada and Lorbec, SSPM accomplished its interference through improper means.

38. As a direct and proximate result of SSPM Bathurst's wrongful interference with the Lorbec subcontract, Spirtas Canada has sustained and will in the future sustain damages in excess of $75,000.

39. The wrongful conduct of SSPM Bathurst was outrageous because of evil motive or reckless indifference to the contractual rights of others. Spirtas Canada is entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Spirtas Canada prays for a judgment against SSPM Bathurst in Count V as follows:

(1) for compensatory damages in excess of $75,000;

(2) for punitive damages;

(3) for costs of suit; and

(4) for such other relief as the Court may deem proper under the circumstances.

**Count VI (Tortious Interference with Contractual Relations)**

COMES NOW Spirtas Canada and for Count VI of its First Amended Complaint against the American Iron entities and Herbert Black, individually, states to the Court as follows:

40. Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20, paragraphs 22 through 24, paragraphs 24 through 27, paragraphs 29 through 31, paragraphs 33 and 34, and paragraphs 36 through 39 hereof.

41. At the insistence of Herbert Black, Spirtas Canada supplied a redacted copy of the Lorbec subcontract to Black, and American Iron and Black thereby knew of the existence of the Lorbec subcontract.

42. Through the wrongful actions of Herbert Black, American Iron and Black maliciously, without justifiable cause, and with intent to interfere with the business and contractual relationships between Spirtas Canada and SSPM Bathurst and between Spirtas Canada and Lorbec, interfered with and prevented the performance of all the Bathurst Paper Mill demolition and materials salvage contracts by prevailing upon SSPM Bathurst to lock out both Spirtas Canada and Lorbec from the Bathurst job site. Through the wrongful actions of Black, American Iron and Black accomplished their interference through improper means.

43. As a direct and proximate result of the wrongful interference by American Iron and Black with all the Bathurst Paper Mill contracts, Spirtas Canada has sustained and will in the future sustain damages in excess of $75,000.

44. The wrongful conduct of American Iron and Black was outrageous because of evil motive or reckless indifference to the contractual rights of others. Spirtas Canada is entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Spirtas Canada prays for a judgment against American Iron & Metal Company, Inc., American Iron & Metal, L.P., and Herbert Black, individually, in Count VI as follows:

(1)	for compensatory damages in excess of $75,000;

(2)	for punitive damages;

(3)	for costs of suit; and

(4)	for such other relief as the Court may deem proper under the circumstances.

**Count VII (Civil Conspiracy)**

COMES NOW Spirtas Canada and for Count VII of its First Amended Complaint against SSPM Bathurst, the American Iron entities and Herbert Black, individually, states to the Court as follows:

45.     Spirtas Canada restates and realleges each and every allegation contained in paragraphs 1 through 20, paragraph 22 through 24, paragraphs 24 through 27, paragraphs 29 through 31, paragraphs 33 and 34, paragraphs 36 through 39, and paragraphs 41 through 44 hereof.

46.     SSPM Bathurst, American Iron and Black knowingly entered into an unlawful agreement and conspiracy to interfere with all the Bathurst Paper Mill demolition and materials salvage contracts and thereby prevent Spirtas Canada from recovering its profits or meeting its contractual obligations under those contracts.

47.     SSPM Bathurst, American Iron and Black carried out their common and unlawful purpose when SSPM Bathurst notified Spirtas Canada that it was stopping all work at the Bathurst Paper Mill; locked out Spirtas Canada and Lorbec from the job site; arranged for its lawyers to notify the City of Bathurst that the owner of the property would not approve Lorbec's application for the issuance of a demolition permit; and refused to relinquish any part of the $2,750,000 it received from Spirtas Canada to cover its costs in purchasing the Bathurst Paper Mill.

48.     As a direct and proximate result of the unlawful conspiracy among SSPM Bathurst, American Iron and Black, and the wrongful actions of SSPM Bathurst in furtherance of the conspiracy, Spirtas Canada has sustained and will in the future sustain damages in excess of $75,000.

49. The wrongful conduct of SSPM Bathurst, American Iron and Black was outrageous because of their evil motive or reckless indifference to the contractual rights of others. Spirtas Canada is entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Spirtas Canada prays for a judgment against SSPM Bathurst, American Iron & Metal Company, Inc., American Iron & Metal, L.P., and Herbert Black, individually, in Count VII as follows:

(1) for compensatory damages in excess of $75,000;

(2) for punitive damages;

(3) for costs of suit; and

(4) for such other relief as the Court may deem proper under the circumstances.

Respectfully submitted,

TIMOTHY E. HAYES & ASSOCIATES L.C.

By:  /s/Timothy E. Hayes
    Timothy E. Hayes    MoFed Bar #3353
    Daniel R. Schramm    MoFed Bar # 4303
    231 S. Bemiston Ave., Suite 950
    St. Louis, MO 63105
    thayes@tehayes.com
    dschramm@tehayes.com
    (314) 726-6767
    (314) 726-6765 (FAX)

ATTORNEYS FOR PLAINTIFF